1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

TARZ MITCHELL,

     Plaintiff,

v.

HOWARD SKOLNIK, *et al*.,

     Defendants.

Case No. 2:09-CV-02377-KJD-PAL

**ORDER**

     Before the Court is the Amended Motion to Dismiss, or in the Alternative For Summary Judgment (#24) of Defendants Vincent Vedova, Howard Skolnik, Michael Thalman, Brian Williams, George Sorich, James Baca, Lavert Taylor, Don Helling, Gregory Cox, Gregory Wayne Smith and Clarence King (collectively "Defendants).  Plaintiff has filed an Opposition (#31) and Defendants have filed a Reply (#39).  Plaintiff also filed a Sur-Response (#40).

I.  Background

     Plaintiff is an African-American Hebrew Israelite.  Plaintiff is currently in the custody of  the Nevada Department of Corrections ("NDOC").  Count I of the Complaint alleges that the Defendants Skolnik, Cox, Helling, Smith, Williams and Baca violated  Plaintiff's religious rights pursuant to the First Amendment, Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and Equal Protection via the Fourteenth Amendment and are liable for conspiracy to violate his civil rights by denying him kosher meals because his Jewish faith was not verified by an outside entity.

     Count II alleges that Defendants Thalman, Sorich, Verdova, and Shaw violated Plaintiff's First Amendment rights to petition the government for redress by retaliating against the Plaintiff for

1  filing grievances. Specifically, Plaintiff alleges that Defendants failed to schedule, announce, and
2  facilitate Jewish services at Nevada State Prison, and confiscated religious headwear.

3       Count III of the Complaint alleges that the Defendant Verdova violated Plaintiff's religious
4  rights pursuant to the First Amendment, RLUIPA, and Equal Protection via the Fourteenth
5  Amendment and conspired to violate his civil rights by calling him a "Nigger Jew" and attempting to
6  belittle and harass Plaintiff for his religious beliefs.

7       Count IV alleges that King and Taylor violated Plaintiff's religious rights pursuant to the First
8  Amendment, RLUIPA, and Equal Protection via the Fourteenth Amendment and conspired to violate
9  his civil rights when King allegedly threatened to transfer Black Jews if they continued to file
10  grievances, and when Taylor and King permitted other inmates to read the grievances of Black Jews.

11       Count V of the Complaint alleges that the Defendants Skolnik, Cox, Helling, Smith,
12  Williams and Baca violated Plaintiff's religious rights pursuant to the First Amendment, RLUIPA,
13  and Equal Protection via the Fourteenth Amendment and conspired to violate his civil rights by
14  denying him kosher meals because he is black.

15  II.  Legal Standard

16      A.  Motion to Dismiss

17       In considering a motion to dismiss for failure to state a claim under FRCP 12(b)(6), "all well-
18  pleaded allegations of material fact are taken as true and construed in a light most favorable to the
19  non-moving party." Wyler Summit Partnership v. Turner Broadcasting System, Inc., 135 F.3d 658,
20  661 (9th Cir.1998).  Consequently, there is a strong presumption against dismissing an action for
21  failure to state a claim.  See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir.1997) (citation
22  omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,
23  accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct.
24  1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Plausibility, in
25  the context of a motion to dismiss, means that the plaintiff has pleaded facts which allow "the court
26  to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The

2

1    *Iqbal* evaluation illustrates a two prong analysis.  First, the Court identifies "the allegations in the

2    complaint that are not entitled to the assumption of truth," that is, those allegations which are legal

3    conclusions, bare assertions, or merely conclusory.  <u>Id</u>. at 1949–51.  Second, the Court considers the

4    factual allegations "to determine if they plausibly suggest an entitlement to relief."  <u>Id</u>. at 1951.  If the

5    allegations state plausible claims for relief, such claims survive the motion to dismiss.  <u>Id</u>. at 1950.

6         B. Summary Judgment

7         Summary judgment may be granted if the pleadings, depositions, answers to interrogatories,

8    and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

9    material fact and that the moving party is entitled to a judgment as a matter of law.  <u>See</u>, Fed. R. Civ.

10   P. 56(c); <u>see also</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The moving party bears the

11   initial burden of showing the absence of a genuine issue of material fact.  <u>See</u>, <u>Celotex</u>, 477 U.S. at

12   323.

13        The burden then shifts to the nonmoving party to set forth specific facts demonstrating a

14   genuine factual issue for trial.  <u>See</u>, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

15   587 (1986); Fed. R. Civ. P. 56(e).  "[U]ncorroborated and self-serving testimony," without more, will

16   not create a "genuine issue" of material fact precluding summary judgment. <u>Villiarimo v. Aloha</u>

17   <u>Island Air Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002).  Summary judgment shall be entered "against a

18   party who fails to make a showing sufficient to establish the existence of an element essential to that

19   party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex</u>, 477 U.S. at 322.

20        Where parties introduce evidence outside of the pleadings, a motion to dismiss will be treated

21   as a motion for summary judgment.  Fed. R. Civ. Pro. 12(d).

22        C.  *Pro Se* Pleadings

23        Courts must liberally construe the pleadings of *pro se* parties.  <u>See</u> <u>United States v. Eatinger</u>,

24   902 F.2d 1383, 1385 (9th Cir. 1990). "Even given the more generous pleading standards for *pro se*

25   plaintiffs" a plaintiff must "provide [the] minimum factual basis needed to provide notice to [the]

26   defendants."  <u>Turner v. County of Los Angeles</u>, 18 Fed.Appx. 592, 596 (9th Cir.  2001).  *Pro se*

1   litigants must, at least, "provid[e] a defendant with notice of what it is that it allegedly did wrong."

2   Brazil v. U.S. Dept. of Navy, 66 F.3d 193, 199 (9th Cir. 1995).  A *pro se* complaint can be dismissed

3   if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which

4   would entitle him to relief."  Haines v. Kerner, 404 U.S. 519, 520-521.  (1972) (quoting Conley v.

5   Gibson, 355 U.S. 41, 45-46 (1957)).

6       D.  42 USC § 1983 Claims

7       Title 42 USC § 1983 "provides a federal cause of action against any person who, acting under

8   color of state law, deprives another of his federal rights."  Conn v. Gabbert, 526 U.S. 286, 290

9   (1999).  § 1983 offers no substantive legal rights, but rather provides procedural protections for

10  federal rights granted elsewhere.  Albright v. Oliver, 510 U.S. 266, 271 (1994).  To maintain a claim

11  under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal

12  Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting

13  under color of state law."  Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

14  III.  Analysis

15      A. Defendants' Official Capacity Immunity

16      Defendants argue that  Plaintiff's claims for monetary damages under the federal civil rights

17  statutes against the defendants in their official capacity are barred by the state sovereign immunity

18  recognized by the Eleventh Amendment.  See e.g., Taylor v. List, 880 F.2d 1040, 1045 (9th

19  Cir.1989); Cardenas v. Anzal, 311 F.3d 929, 934-35 (9th Cir.2002).  In his response, Plaintiff

20  concedes this point.  (#31 at 4.)  Accordingly, all claims against the Defendants in their official

21  capacities are dismissed.

22      B. Failure to Grieve Counts III and IV

23      Defendants argue that Counts III and IV should be dismissed because Plaintiff failed to

24  exhaust his administrative remedies.

25      The Prison Litigation Reform Act of 1996 ("PLRA") provides that "[n]o action shall be

26  brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a

4

1  prisoner confined in any jail, prison, or other correctional facility until such administrative remedies

2  as are available are exhausted." 42 U.S.C. § 1997e(a) (2002).  Failure to exhaust administrative

3  remedies is an affirmative defense and the defendants bear the burden of raising and proving failure

4  to exhaust.  Jones v. Bock, 549 U.S. 199, 212-14 (2007).  Proper exhaustion requires that the

5  plaintiff utilize all steps made available by the agency and comply with the agency's deadlines and

6  other procedural rules.  Woodford v. Ngo, 548 U.S. 81, 89-90 (2006).  Proper exhaustion must be

7  completed before a complaint may be filed.  Id. at 83-84.  See Roberts v. Klein, 770 F. Supp. 2d

8  1102 (D. Nev. 2011).  A nonexhaustion defense should be raised in an unenumerated Rule 12(b)

9  motion rather than in a motion for summary judgment.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th

10  Cir.2003). In deciding such a motion, the district court may look beyond the pleadings and decide

11  disputed issues of fact. Id.

12         Plaintiff has failed to exhaust his administrative remedies with respect to the claim in Count

13  III that Plaintiff was called offensive names in retaliation for exercising his protected rights.  Plaintiff

14  is required to exhaust all his administrative remedies in compliance with procedural rules.  Ngo, 548

15  U.S. at 90.  The fully and properly completed grievance forms fail to describe the behavior that is the

16  basis of his claim that his First Amendment rights and Fourteenth Amendment rights were violated

17  by Defendant Verdova's calling him a "nigger jew."  Plaintiff's lower-level grievance mentions

18  "officer's comments" which were offensive.  However, Defendant has met its burden to show that

19  exhaustion was incomplete.  Plaintiff also failed to grieve or even plead facts supporting his

20  conspiracy claim.  Conclusory allegations of a conspiracy are insufficient to support the conspiracy

21  claim in Count III and accordingly, it is dismissed.  See Burns v. County of King, 883 F.2d 819, 821

22  (9th Cir. 1989).   Plaintiff properly grieved and adequately states a claim based on Defendant

23  Verdova's retaliation by impeding Plaintiff's religious worship.  Accordingly the claims based on

24  retaliation by impeding Plaintiff's worship survive this Motion.

25         Plaintiff's grievances do not indicate the facts giving rise to Count IV's First Amendment,

26  Fourteenth Amendment, and conspiracy claims.  Although Plaintiff grieved that one inmate was

1   threatened with transfer, he did not grieve that Defendant King threatened him personally or

2   threatened to transfer all Hebrew Israelites.[1]  Further, he does not state in his grievance that

3   Defendants King and Taylor allowed other inmates to read his grievances or interfered with the

4   grievance process.  Plaintiff also failed to sufficiently grieve or plead conspiracy. See Id.

5   Accordingly, Count IV is dismissed in its entirety.

6              C.  Failure to Link Violation to Retaliation in Count II

7        Defendants argue that Count II should be dismissed because Plaintiff fails to link the alleged

8   constitutional violation and the allegedly retaliatory act.

9        Allegations of retaliation against a prisoner for exercising his civil rights to speech or to

10  petition the government may support a claim under § 1983. Rizzo v. Dawson, 778 F.2d 527, 532 (9th

11  Cir.1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir.1989).  There are five

12  elements of a "viable claim of First Amendment retaliation" in the prison context: "(1) [a]n assertion

13  that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's

14  protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment

15  rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v.

16  Robinson, 408 F.3d 559, 567–68 (9th Cir.2005).

17       Under the generous standards to which *pro se* parties are entitled, Plaintiff states a viable

18  claim for retaliation in Count II.  Plaintiff claims that as a result of his constitutionally protected acts

19  of filing grievances and exercising his religion, he was hindered from worshiping and subject to other

20  forms of harassment by Defendants Thalman, Sorich, Verdova and Shaw.  Plaintiff alleges that these

21  defendants actions chilled the exercise of his rights and were unrelated to a legitimate correctional

22  goal.  Although Defendants provide an affidavit claiming that voluntary changes by the NDOC

23  rectified the subject of Plaintiff's grievances, this assertion is insufficient to grant dismissal and does

24  not eliminate a dispute of material fact.  See Lozano v. AT&T Wireless Services, Inc., 504 F.3d 718,

25  _____

26       [1] Although Plaintiff provides an affidavit to this effect, it is insufficient to show exhaustion of
    administrative remedies under 42 U.S.C. § 1997e(a) (2002).

6

1  733 (9th Cir.2007).  ("defendant bears the burden of showing that its voluntary compliance moots a

2  case by convincing the court that 'it is absolutely clear the allegedly wrongful behavior could not

3  reasonably be expected to recur.'") (citations omitted).  Accordingly, either dismissal or summary

4  judgment would be inappropriate and Plaintiff's claims in Count II survive.

5          D.  Equal Protection Claim in Count V

6          Defendants argue that Plaintiff's Fourteenth Amendment Equal Protection claim should be

7  dismissed because the NDOC policy that resulted in Plaintiff being denied kosher meals because his

8  faith was not verified by an outside organization is race neutral.

9          The Equal Protection Clause "is essentially a direction that all persons similarly situated

10 should be treated alike." City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105

11 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "Prisoners are protected under the Equal Protection Clause of the

12 Fourteenth Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S.

13 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). To state a viable claim under the Equal Protection

14 Clause, however, a prisoner "must plead intentional unlawful discrimination or allege facts that are at

15 least susceptible of an inference of discriminatory intent." Byrd v. Maricopa County Sheriff's Dep't,

16 565 F.3d 1205, 1212 (9th Cir. 2009) (quoting Monteiro v. Tempe Union High School District, 158

17 F.3d 1022, 1026 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in

18 part because of a plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003)

19 (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994)).

20         Plaintiff's complaint presents a plausible claim for unlawful discrimination in violation of the

21 Equal Protection Clause.  Plaintiff claims that the NDOC policy of requiring Plaintiff to obtain

22 religious verification by an outside organization prior to receiving kosher meals resulted in his being

23 treated different than Christian, Muslim, or non-African-American  inmates.  Plaintiff further claims

24 that the verification policy to which he was subject was implemented because the inmates seeking

25 kosher meals were African-American.  The facts, as pled by the Plaintiff, are susceptible to an

26 inference of discriminatory intent and could plausibly state a claim for relief, especially given the

1    lenient standard applied to *pro se* parties.  See Brazil, 66 F.3d at 199.  Accordingly, Plaintiff's claim

2    for discrimination pursuant to the Fourteenth Amendment in Count V survives.

3          E.  Violation of First Amendment and Fourteenth Amendment Rights in Count I

4          For purposes of the instant motion, the sincerity of Plaintiff's religious beliefs is presumed.

5    Incarcerated persons retain their First Amendment right to free exercise of religion.  O'Lone v. Estate

6    of Shabazz, 482 U.S. 342, 348 (1987).  The free exercise right, however, is necessarily limited by the

7    fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to

8    maintain prison security. Id. These competing interests are balanced properly and the prison

9    regulation is valid if it is reasonably related to legitimate penological interests. Id. (quoting Turner v.

10   Safley, 482 U.S. 78, 107 S.Ct. 2254 (1987).  Plaintiff alleges that Defendants violated his First

11   Amendment rights by denying him kosher meals because his faith was not verified by an outside

12   entity as required by NDOC policy.  The relevant inquiry for purposes of the instant Motion is

13   whether the *pro se* Plaintiff has pled facts that could show that the policy is not reasonably related to

14   a legitimate penological interest.

15         The Supreme Court has laid out four factors courts should balance to determine whether a

16   prison regulation is reasonably related to legitimate penological interest. Turner v. Safley, 482 U.S.

17   78, 89-90.  The Turner factors are: (1) whether there is a valid rational connection between the prison

18   regulation and the legitimate government interest put forward to justify it; (2) whether there are

19   alternative means of exercising the right that remain open to prison inmates; (3) whether

20   accommodation of the asserted constitutional right will impact guards and other inmates or prison

21   resources generally; and (4) whether there is an absence of ready alternatives versus the existence of

22   obvious, easy alternatives. See Roberts v. Klein, 770 F.Supp. 2d 1102, 12 (D. Nev. 2011) (citing

23   Turner v. Safley, 482 U.S. 78, 89-90).

24         Plaintiff has not pled any facts which demonstrate that the verification policy and consequent

25   denial of kosher meals lacks a rational connection to a legitimate government interest.  Accordingly,

26   the first Turner factor militates in favor of the policy since it rationally serves NDOC's legitimate

1  interest in orderly administration of the prison program to provide kosher meals.  See e.g. Resnick v.

2  Adams, 348 F.3d 763, 769 (9th Cir. 2003).

3          The Complaint provides facts sufficient to survive dismissal relating to the other three Turner

4  factors.  Specifically, Plaintiff has pled facts which could show that the policy is not reasonably

5  related to a legitimate penological interest because there are no alternative means available for him to

6  exercise his rights, the impact on the guards, other inmates, and prison resources is not significant,

7  and workable alternatives exist.  Defendants also represent that Plaintiff will receive kosher meals

8  under a new policy that has or is being promulgated, further indicating that viable alternatives exist

9  and that accommodation is possible.  The Complaint contains facts that could show that the policy in

10  question does not serve a legitimate penological interest and that his First Amendment rights were

11  violated.  Defendants offer no evidence contradicting the allegations in the Complaint.  Accordingly,

12  Plaintiff's claim for violations of his First Amendment and Fourteenth Amendment rights in Count I

13  survive.

14          F.  Mootness of RLUIPA Claims

15          Defendants argue that Plaintiff's RLUIPA claims are moot because the NDOC is currently

16  amending its policies relating to kosher meals.

17          RLUIPA provides in relevant part that "'no government shall impose a substantial burden on

18  the religious exercise of a person residing in or confined to an institution . . . even if the burden

19  results from the rule of general applicability', unless the government establishes that the burden

20  furthers 'a compelling governmental interest' and does so by 'the least restrictive means.'"

21  Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005)(citing 42 U.S.C. §2000cc-1(a)(1)-(2)).

22  RLUIPA defines "religious exercise to include 'any exercise of religion, whether or not compelled

23  by, or central to, a system of religious belief.'"  Id.  (citing 42 U.S.C. §2000cc-5(7)(A).

24          Defendants argue that, because NDOC has since changed or is in the process of changing its

25  policy regarding kosher meals, Plaintiff's RLUIPA claim is moot.  When arguing that a claim has

26  become moot due to a voluntary change, a "defendant bears the burden of showing that its voluntary

9

1    compliance moots a case by convincing the court that 'it is absolutely clear the allegedly wrongful

2    behavior could not reasonably be expected to recur.'" Lozano v. AT&T Wireless Services, Inc., 504

3    F.3d 718, 733 (9th Cir.2007).  Voluntary cessation of challenged conduct renders a claim moot if

4    "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation

5    will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of

6    the alleged violation." County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (citations omitted).

7    A defendant's voluntary change in policy only renders a claim moot if it is "'a permanent change' in

8    the way it [does] business and [is] not a 'temporary policy that the agency will refute once this

9    litigation has concluded.' " Smith v. Univ. of Washington Law Sch., 233 F.3d 1188, 1194 (9th

10   Cir.2000) (quoting White v. Lee, 227 F.3d 1214, 1243 (9th Cir.2000)).  Courts have made clear that

11   this standard is stringent and that the burden to be carried by the Defendant is "heavy" Lee, 227 F.3d

12   at 1243 (quoting United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968)).

13          In the instant case, Defendants have provided an affidavit indicating that Plaintiff will receive

14   kosher meals when the NDOC implements the Virginia Common Fare Diet, a plan designed to meet

15   the religious dietary restrictions of inmates.  Since Plaintiff is not yet receiving kosher meals, it is

16   impossible that his claim is moot.  A mere assertion in an affidavit that Plaintiff will receive his

17   kosher meals "pending NDOC's revisions to the meal program" is grossly insufficient to meet the

18   heavy burden imposed on defendants arguing mootness.  See Seneca v. Ariz., 345 Fed. Appx. 226,

19   228 (9th Cir. 2009) (affidavit attesting a prison's voluntary policy change was insufficient to moot

20   plaintiff's claims under RUILPA)).

21          Plaintiff has pled adequate facts to show that the policy withholding kosher meals absent

22   outside verification of his faith may not be the least restrictive means to further a compelling

23   governmental interest. (See section on First Amendment claims supra.)  There is a dispute of fact as

24   to whether this claim is moot and the Defendants have not met their burden to show that this claim

25   should be dismissed or denied.  Accordingly, summary judgment or dismissal of Plaintiff's RUILPA

26

1   claims as moot is inappropriate without evidence showing that the voluntary change in NDOC policy

2   allows Plaintiff to receive meals to which he is entitled and is a permanent change.

3          G.  RLUIPA Damages

4          Defendants argue that they are not liable for damages under RLUIPA in their official and

5   individual capacities.

6          The Ninth Circuit has recently held that RLUIPA does not authorize monetary damages

7   against defendants in their official capacities.  Holley v. Cal. Dep't of Corrections, 599 F.3d 1108,

8   1112 (9th Cir. 2010).  Although the Ninth Circuit has not ruled on the issue, courts in this District

9   have followed the Eleventh, Fifth, Fourth, and Seventh Circuits in holding that state officials cannot

10  be held liable in their individual capacities under RLUIPA.  See Burriola v. State of Nevada, 2010

11  WL 2326118 *13 (D. Nev. 2010) (citing Smith v. Allen, 502 F.3d 1255 (11th Cir. 2007); Sossamon

12  v. Lone Star State of Texas, 560 F.3d 316, 325 (5th Cir. 2009); Rendelman v. Rouse, 569 F.3d 182,

13  184 (4th Cir. 2009); Nelson v. Miller, 570 F.3d 868, 883-885 (7th Cir. 2009)).  Accordingly,

14  Plaintiff's claims for damages under RLUIPA are dismissed.

15         H.  Qualified Immunity

16         Defendants argue that they are entitled to qualified immunity from suit in their individual

17  capacities.

18         Government officials exercising discretionary functions generally enjoy qualified immunity

19  from personal liability for actions within the scope of their official duties.  See Harlow v. Fitzgerald,

20   457 U.S. 800, 807 (1982).  Qualified immunity applies unless a defendant's conduct violated

21  "clearly established statutory or constitutional rights of which a reasonable person would have

22  known."  Hope v. Pelzer, 536 U.S. 730, 752 (2002) (internal quotation omitted).  Originally, in order

23  to determine whether a government official is entitled to qualified immunity, a court first had to

24  address whether, taken in the light most favorable to the party asserting the injury, the facts alleged

25  show the defendant violated a statutory or constitutional right.  See Resnick v. Adams, 348 F.3d 763,

26  766-67 (9th Cir. 2003).   If "a violation could be made out" the court then had to decide whether the

1    right was clearly established.  Id.  "The plaintiff bears the burden of showing that the right he alleges

2    to have been violated was clearly established."  Collins v. Jordan, 110 F.3d 1363, 1369 (9th Cir.

3    1996).  A clearly established right is one whose "contours ... must be sufficiently clear that a

4    reasonable official would understand what he is doing violates that right."  Anderson v. Creighton,

5    483 U.S. 635, 640 (1987).  The right is clearly established if "it would be clear to a reasonable officer

6    that his conduct was unlawful in the situation he confronted."  Saucier v. Katz, 533 U.S. 194, 202

7    (2001).  The exact action need not have been held unlawful, but "in light of pre-existing law the

8    unlawfulness must be apparent."  Anderson, 483 U.S. at 640 (internal citations omitted).  This

9    evaluation must be "in light of the specific context of the case, not as a broad general proposition."

10   Saucier, 533 U.S. at 201.  An objective standard applies.  Harlow, 457 U.S. at 818-19.  Additionally,

11   the right must be clearly established at the time of the allegedly impermissible conduct.  Camarillo v.

12   McCarthy, 998 F.2d 638 (9th Cir. 1993).

13          Recently, however, the Supreme Court determined that the two-step sequence set out in

14   Saucier, while often appropriate, "should no longer be regarded as mandatory."  Pearson v. Callahan,

15   129 S.Ct. 808, 818 (2009).  A district court is permitted to exercise its "sound discretion" in deciding

16   which prong should be addressed first "in light of the circumstances" of the particular case.  Id.

17          Here Plaintiff not only alleges that Defendants denied him kosher meals by instituting  a

18   policy that required outside verification of his faith, but that their motivation for doing so was based

19   on the race of the persons requesting the kosher meals.  He further alleges that certain of the

20   Defendants retaliated against him for filing grievances and exercising his religious rights.  Any

21   reasonable official would know that enacting and enforcing a policy denying a form of religious

22   worship for race-based reasons violates a clearly established right.  Similarly, any official would

23   know that retaliation for filing grievances or for exercising religious rights is constitutionally

24   impermissible.  Assuming the truth of these allegations, as the Court must for purposes of this

25   motion, Defendants are not immune from suit in their individual capacities.

26   //

1    I. Nevada Revised Statutes: 197.200 and 212.020

2          Although Defendants do not address it in their Motion, Plaintiff alleges that the Defendants

3    violated his rights under NRS §212.020 and NRS 197.200.  Courts have long held that, unless an

4    exception exists, "'criminal statutes cannot be enforced by civil actions.'"  Collins v. Palczewski,

5    841 F.Supp. 333, 340 (D.Nev. 1993)(quoting Bass Angler Sportsman Soc. v. United States Steel

6    Corp., 324 F.Supp. 412, 415 (S.D. Ala. 1971)(citation omitted); United States v. Jourden, 193 F.

7    986, 3 Alaska Fed. 770 (9th Cir. 1912)).  NRS § 212.020 provides the classification of the offense of

8    inhumanity to prisoners.  NRS § 197.200 provides protection to the general population of Nevada

9    against the oppressive, injurious or confiscatory actions of state officers acting under the color of

10   state law. Both of these sections are strictly criminal in nature and no exception applies.  Collins, 841

11   F.Supp. at 340.

12         Accordingly, Plaintiff's state law claims brought under NRS § 212.020 and NRS § 197.200

13   are dismissed.

14   IV.  Conclusion

15         Accordingly **IT IS HEREBY ORDERED THAT** Defendants' Amended Motion to Dismiss,

16   or in the Alternative For Summary Judgment (#24) is **GRANTED in part and DENIED in part.**

17         **IT IS FURTHER ORDERED THAT** all claims against the Defendants in their official

18   capacities, claims for damages under RLUIPA, claims brought under NRS § 212.020 and NRS §

19   197.200, claims in Counts III other than those based on retaliation by impeding Plaintiff's worship,

20   and all claims in count IV are dismissed.

21         DATED this 11th day of August 2011.

22

23

24   _____

25   Kent J. Dawson
     United States District Judge

26

13